UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HURFORD GLOBAL, LLC,

        Plaintiff,

    v.

ROM TECHNOLOGIES, INC., PETER ARN, and
SANFORD A. GOMBERG,

        Defendants.

Case No. 20-cv-484-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' motion to dismiss this case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) (Doc. 42).  Plaintiff Hurford Global, LLC has responded to the motion (Doc. 47)[1], and the defendants have replied to that response (Doc. 50).  Hurford Global asks the Court to strike the defendants' reply (Doc. 52), and the defendants have responded to that motion (Doc. 54).

As a preliminary matter, the Court will deny Hurford Global's motion to strike the defendants' reply brief (Doc. 52).  Hurford Global argues that the reply fails to state exceptional circumstances justifying a reply as required by Local Rule 7.1(c).  The defendants maintain that exceptional circumstances exist and that their reply simply responded to Hurford Global's arguments in its response.  The Court has reviewed the defendants' reply brief and finds that is an acceptable reply to Hurford Global's response and raises no new arguments for the first time,

---

[1] Complete, unredacted copies of the response and a supporting declaration have been filed under seal (Docs. 55 & 56).  A complete, unredacted copy of the First Amended Complaint, including attachments, has also been filed under seal (Doc. 40).

which would be ignored by the Court even if they had.  *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).  Additionally, the Court notes that the reply brief was immaterial to its ultimate decision in this case as set forth below.

## I.      Background

This case centers on an agreement to exclusively license certain patents to defendant ROM Technologies, Inc. (or its predecessors ROM3 California LLC and ROM3 Rehab LLC (collectively, "ROM")).  Defendants Sanford A. Gomberg and Peter Arn were members of the ROM3 LLCs and are shareholders and/or officers of ROM Technologies, Inc.  The patents involve a rehabilitative device invention designed to improve the range of motion for people with knee or hip injuries or who have had surgery.  Essentially, Hurford Global owns the patents that were exclusively license to ROM in the Exclusive Licensing Agreement ("ELA").  In exchange for the exclusive license, ROM agreed to develop, market, and sell the products developed from the patents and to pay royalties to the patent owner.  The details of the circumstances surrounding the agreement will be set forth in more detail below.  The parties later modified the ELA with a memorandum of understanding ("MOU") that purported to substantially changed some of the terms.

Hurford Global now accuses ROM of not performing its end of the ELA in good faith and, instead, developing a competing rehabilitation device and giving that device a name deceptively similar to the product it developed using the licensed patents.  Hurford Global also accuses ROM of failing to make the payments required by the MOU, and then wrongfully terminating the modified ELA.

Hurford Global has sued ROM, Gomberg, and Arn in an eleven-count First Amended Complaint asserting the following claims:

| | |
|---|---|
| Count I: | Under the Declaratory Judgment Act, 28 U.S.C. § 2202, for a declaration that the ELA is not terminated; |
| Count II: | Breach of contract; |
| Count III: | Fraud; |
| Count IV: | Breach of fiduciary duty; |
| Count V: | Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq*. |
| Count VI: | Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS § 501/1, *et seq*., by unfair business practices; |
| Count VII: | Violation of ICFA by deceptive acts; |
| Count VIII: | Violation of § 32 the Lanham Act, 15 U.S.C. § 1114, by trademark infringement; |
| Count IX: | Federal common law trademark infringement; |
| Count X: | Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, by false designation of origin; and |
| Count XI | Negligent misrepresentation. |

The defendants ask the Court to dismiss this case on the grounds that the defendants do not have sufficient contacts with the state of Illinois to support personal jurisdiction. Alternatively, the defendants ask the Court to transfer this case to the Central District of California, which it argues is required by the forum selection clause in the ELA that specifies any litigation will be conducted in Los Angeles, California.

Hurford Global, on the other hand, points to business the defendants transacted in Illinois, torts they committed in Illinois, and communications they directed to Illinois that it claims bring the defendants within the specific personal jurisdiction of this Court.  It further argues the forum selection clause is unenforceable because it has no logical connection to the dispute before the Court and, in any case, presents issues beyond the scope of the clause.

The Court first addresses the question of transfer of venue because resolution of that issue will resolve the personal jurisdiction issue as well.

## II.   Analysis

### A.   Transfer Venue

The ELA contains a provision regarding the choice of law and the appropriate forum for

litigation:

> This Agreement will be *construed, interpreted. and applied in accordance with the laws of the State of California*, excluding any choice-of-law rules that would direct the application of the laws of another jurisdiction, except that the scope and validity of any patent or patent application under Patent Rights will be determined by the applicable law of the country of such patent or patent application. *Any legal action brought by one Party against the other Party relating to this Agreement will be conducted in Los Angeles, California.* The prevailing Party in any such legal action under this Agreement will be entitled to recover its reasonable attorneys' fees in addition to its costs and necessary disbursements.

ELA § 27.1 (emphasis added) (Doc. 37-1 at 20).

The defendants argue that the forum selection clause is mandatory and that this dispute falls within its scope. It therefore asks the Court to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) so the case may be heard in Los Angeles, as provided in the forum selection clause.

Hurford Global, on the other hand, contends that the forum selection clause is unenforceable. It argues that under California law, the governing law specified in the ELA, a forum selection clause is only enforceable if the chosen forum has a logical connection with the disputes in the case, which Los Angeles does not. It also contends that the dispute in this case is outside the scope of the clause anyway.

### 1.   Law Applicable to the Transfer Analysis

The Court first turns to the threshold question of what law applies to the question of transferring venue. This case is before the Court based on Hurford Global's assertion of federal question jurisdiction under 28 U.S.C. § 1331 and federal diversity jurisdiction under 28 U.S.C. § 1332(a). Pl.'s Compl. ¶ 1. The law is clear that, in such a case, 28 U.S.C. § 1404[1] controls a

---

[1]Section 1404 reads in pertinent part:

request to transfer venue based on a forum selection clause notwithstanding any state law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988); *accord Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 58 (2013).  The Court may, of course, consider state law preferences in weighing the interests Congress has directed the Court to consider in making a transfer decision, but it is within the federal procedural framework of § 1404 that this must occur.  *Id.* at 30; *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 608 (7th Cir. 2006) (district court should "consider the policy behind the state's judgment of validity or invalidity because that policy would bear on whether transferring the case would be 'in the interest of justice,'" but should make an independent decision whether to transfer venue); *see, e.g., Wins Equip., LLC v. Rayco Mfg., Inc.*, 668 F. Supp. 2d 1148, 1152 (W.D. Wis. 2009);  *Travel Supreme, Inc. v. NVER Enterprises, Inc.*, No. 3:07CV194PPS, 2007 WL 2962641, at *7 (N.D. Ind. Oct. 5, 2007); *Gleich v. Tastefully Simple, Inc.*, No. 05 C 1415, 2005 WL 3299187, at *5 (N.D. Ill. Dec. 2, 2005).

The cases Hurford Global cites do not convince the Court otherwise.  For example, it points to *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014), a case in which the Court of Appeals for the Seventh Circuit evaluated an arbitration clause—a specie of forum selection clause—and held that state law should be applied to determine the clause's enforceability.  *Id.* at 774-75.  That holding was expressly limited, however, to situations where there was *no controlling federal statute*.  *Id.* at 774.  In fact, for this caveat, *Jackson* cites *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009), which noted that the Supreme Court has

---

(a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

provided guidance about the law governing enforceability of forum selection clauses in two

situations:  admiralty cases and transfer under 28 U.S.C. § 1404(a).  The *Wong* court pointed to

*Stewart* for the proposition "that federal law governs the inquiry when a federal court, sitting in

diversity, evaluates a forum selection clause in the context of a 28 U.S.C. § 1404(a) motion to

transfer venue or in the context of any federal statute."  *Wong*, 589 F.3d at 826 (citing *Stewart*,

487 U.S. at 29-30)).  Thus, state law may be appropriate to determine the enforceability of an

*arbitration* clause like in *Jackson*, but where the question is *transfer under § 1404(a)*, that

federal statute governs, *Stewart*, 487 U.S. at 29-30, and state law is not relevant other than as a

factor to weigh in the balance.[2]

> 2.    Transfer Rules

Now that it is settled that federal law governs, the Court turns to that law.  Motions for

transfer of venue for convenience where venue is otherwise proper are governed by the standards

set forth in 28 U.S.C. § 1404.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988);

*Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964).  Under § 1404(a), a district court may transfer

a civil action to any other district where the action might have been brought originally "[f]or the

convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The

decision to transfer a case is left to the discretion of the district court.  *Stewart*, 487 U.S. at 29;

*Van Dusen*, 376 U.S. at 622.

---

[2] To the extent California law may determine whether the ELA, including the forum selection clause, is a valid contract—with all the elements and not subject to defenses such as fraud or duress—no party suggests the forum selection clause is invalid.  *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014) (noting "the law designated in the choice of law clause would be used to determine the validity of the forum selection clause").  In fact, the same individual, Dr. Kenneth Johnson, signed the ELA for both parties in his respective representative capacity for each, hardly suggestive of the kind of irregularity that would make a contract invalid.

In deciding a § 1404(a) motion to transfer, the Court should consider a number of case-specific factors such as, for example, the convenience of the potential transferee forum to the parties and witnesses, the fairness of the transfer in light of any forum selection clause, the parties' relative bargaining power, and the interests of justice in general. *Stewart*, 487 U.S. at 29-30; *see Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (citing *Van Dusen* , 376 U.S. at 622). Ordinarily, the Court should give substantial weight in favor of the forum in which the plaintiff chose to file the complaint and should rarely transfer a case from the plaintiff's selected forum. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). The movant has the burden of establishing that the transfer is "clearly more convenient." *Coffey*, 796 F.2d at 219-20. Even if the circumstances indicate that a transfer would be clearly more convenient to the parties and witnesses, a court may still refuse to transfer the case if it is not in the interest of justice. *Id.* at 220; *Van Dusen*, 376 U.S. at 625. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey*, 796 F.2d at 221. One of these factors is where the litigants are more likely to receive a speedy trial. *Id.*

However, the analysis changes a bit where there is a valid forum selection clause. There, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). Where there is a forum selection clause, the Court must adjust the way it balances the relevant factors in three ways. *Atl. Marine*, 571 U.S. at atl63.

First, it must give the plaintiff's choice of forum no weight, and the plaintiff bears the burden of showing a transfer is unwarranted. *Id.* This is because by agreeing to a specific

forum, the plaintiff has made its choice of its preferred forum as a part of the benefit of the contract's bargain and that initial choice deserves deference.  *Id.*  Second, the Court should disregard arguments about the parties' private interests that do not favor the selected forum.  *Id.* at 64.  This is because, by agreeing to a forum selection clause, the parties have waived arguments about the inconvenience of the chosen forum.  *Id.*  The Court may only consider arguments relating to public interests.  *Id.*  Third, the Court should consider in its public interest analysis the choice of law rules of the selected forum rather than those of the original venue.  *Id.* at 64.  This is to discourage gamesmanship by plaintiffs by trying to secure favorable choice of law rules by filing suit in a forum other than the one to which they agreed.  *Id.* at 65.

The *Atlantic Marine* Court concluded:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id.* at 66.

### 3.    Application to This Case

Application of the § 1404(a) factors to this case requires a look back at the parties' history together, including the origin of the ELA and the forum selection clause.  These facts, asserted in the defendants' motion and supported by affidavit, are consistent with the Amended Complaint and are not disputed in Hurford Global's response to the motion, so the Court takes them as true.

Two of the patents at issue in this case[3] originally belonged to the inventor, Dr. Kenneth Johnson, a California resident.  In 2004, he assigned those patents to Brainchild, LLC.  As of February 2009, Johnson, Hurford Global's sole member Patricia Hurford, and several others were the members of Brainchild, LLC.  Brainchild LLC's status as a limited liability company was revoked in 2012.

In 2013, Johnson and defendant Gomberg, both California residents at that time, created ROM3 California LLC, a California limited liability company based in the Los Angeles area. They were the sole members of ROM3 California LLC until they were joined by defendant Arn, a Connecticut resident, in 2014.

On January 29, 2015, Brainchild Medical Inc. ("BMI"), a California corporation based in the Los Angeles area, entered into the ELA with ROM3 California LLC.  Johnson signed the agreement on behalf of both parties in his official capacities as chief executive officer of BMI and as president and chairman of the board of ROM3 California LLC.  Gomberg also signed on behalf of ROM3 California LLC as its chief executive officer.  The ELA was negotiated and entered into in Los Angeles, California.  ROM3 California LLC, BMI, Johnson, and Gomberg were all residents of or based in the Los Angeles area, so it is no surprise that the ELA selected Los Angeles as the forum for any litigation related to the ELA.  The ELA purported to exclusively license the two patents to ROM3 California LLC even though BMI did not own the patents at that time.

Unbeknownst to Gomberg and Arn, Johnson had been convicted of fraud under federal law at the time the ELA was formed.  They found out in early 2016 when the bank closed ROM3

---

[3] Those patents are Nos. 7,226,394 (granted June 5, 2007) and 7,594,879 (granted September 29, 2009).

California LLC's account.  To try to stabilize matters, ROM3 California LLC and BMI entered into the MOU which, among other things, removed Johnson as an owner of both entities and purported to make the licenses from BMI irrevocable as long as ROM3 California LLC met certain benchmarks.  The MOU was negotiated and signed in Los Angeles in February 2016 by Johnson for BMI and Gomberg for ROM3 California LLC.  The parties dispute its effectiveness.

Thereafter, various changes in identity and ownership occurred.  In early 2016, ROM3 California LLC hired Patricia Hurford, currently the sole member of Hurford Global, as a medical advisor.  In July 2016, ROM3 California LLC became ROM3 Rehab, LLC, a Nevada limited liability company (presumably transferring all its rights and obligations under the ELA to the new entity, *see* ELA ¶ 21.1 (Doc. 37-1 at 17)).  In August 2016, Brainchild, LLC, finally assigned to BMI the patents BMI had purported to license to ROM3 California LLC more than a year earlier.  In August 2017, BMI assigned the two patents to Hurford Global, an Illinois limited liability company based in Illinois.  And in January 2020, ROM3 Rehab, LLC became ROM Technologies, Inc. (again, presumably transferring its rights and obligations under the ELA, *see* ELA ¶ 21.1 (Doc. 37-1 at 17)), a Delaware corporation with its principal place of business in Connecticut.  So currently, Hurford Global owns the patents (to the extent the assignments are valid), and ROM Technologies, Inc. holds the licenses (to the extent they are valid and were validly transferred).  As noted above, this dispute arose because Hurford Global believes ROM, among other things, failed to perform under the ELA and MOU.

The Court first asks whether the forum selection clause covers the disputes in this case.  The forum selection clause broad and mandatory, providing that "[*a]ny legal action* brought by one Party against the other Party *relating to* this Agreement *will be* conducted in Los Angeles, California."  ELA, § 27.1 (emphasis added) (Doc. 37-1 at 20).  "Will be" leaves no room for

doubt or discretion.

Second, the current dispute, while including claims that do not arise directly out of the ELA, most certainly "relates" to the ELA, the nexus of the relations between Hurford Global, ROM, and the subject patents. A plaintiff cannot defeat a forum selection clause by choosing legal theories other than breach of the contract containing the clause. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."). "[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance." *Am. Patriot*, 364 F.3d. at 889. Indeed,

> the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes.

*Id.* Here, all of Hurford Global's claims stem from various aspects of the parties' ELA-centered relationship.

To the extent Hurford Global may argue the forum selection clause does not apply to its claims against Gomberg and Arn because they are not parties to the ELA, that contention has no merit. A party cannot defeat a forum selection clause "by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates." *Id.*; *see Hugel*, 999 F.2d at 209 ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."). Hurford Global's disputes with Gomberg and Arn—closely related to ROM as owners, affiliates,

and/or employees of ROM at the time the ELA was formed and as well as today—relate to the ELA as much as its disputes with ROM itself do.

So in sum, Hurford Global cannot plead fraud or Illinois statutory deceptive practices action claims or sue individuals affiliated with ROM to avoid the forum selection clause.  All of its claims "relate" to the ELA and are within its scope

Having found a valid forum selection clause that covers the dispute in this case, the Court turns to the § 1404(a) analysis.  And since there is a valid forum selection clause, Hurford Global bears the burden of showing the case should remain in this forum contrary to the forum selection clause.  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

As *Atlantic Marine* instructs, the Court gives no weight to Hurford Global's choice of this forum, and it construes all private interest factors to weigh in favor of a transfer to the Central District of California, where the case can be litigated in Los Angeles.  *See id*.  This is appropriate even where Hurford Global and ROM were only successors to the interests of the ELA signatories rather than signatories themselves.  It is standard agency law that, as assignees of the rights under the ELA, they succeeded only to the rights possessed by the assignors and are subject to the same defenses.  *See YDM Mgmt. Co. v. Sharp Cmty. Med. Grp., Inc.*, 16 Cal. App. 5th 613, 621 n.3 (2017); *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 839, (Ill. 1988); *Interlogic Outsourcing, Inc. v. OneSource Virtual, Inc.*, No. 3:18CV300-PPS, 2018 WL 8800190, at *3 (N.D. Ind. Sept. 24, 2018) (assignee subject to forum selection clause).  Thus, if BMI was bound by the forum selection clause—and no party contends it was not—Hurford Global is too.

As for the convenience to the non-party witnesses, it is unclear where they reside—

indeed, if there are any—so the Court cannot determine the convenience of either forum to those individuals.

The Count considers California law in its weighing of the public interest.  Under California law, whether a forum selection clause is enforceable depends on "whether enforcement of the clause would be unreasonable, whether the selected forum has a logical connection to the parties or their transaction, and whether there is a rational basis for the selected forum."  *Glob. Fin. Distribs. Inc. v. Superior Court*, 35 Cal. App. 5th 179, 192 (2019).  The forum selection clause in the ELA passes the test, which the Court judges from the facts and circumstances at the time the ELA was formed.  Here, the ELA was formed between a California limited liability corporation and a California corporation, both based in the Los Angeles area.  The ELA was negotiated and signed in Los Angeles by agents of the business entities that resided in or around Los Angeles at that time.  In light of these facts, it would be absurd to claim that enforcing a forum selection clause specifying Los Angeles as the forum would be unreasonable, that the forum lacked a connection to the parties and the transaction, or that the selection of Los Angeles was irrational.

The successors to the original parties' interests are stuck with this reasonable choice of litigation forum unless and until they agree otherwise.  As the Court has noted above, the current litigants assumed the signatories' rights and duties as they existed at the transfer, *see* ELA ¶ 21.1 (Doc. 37-1 at 17), including the rights embodied in a reasonable forum selection clause.  *See Bromlow v. D&M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020) ("Non-signatories are typically bound by (or may avail themselves of) forum-selection clauses in circumstances where . . . the signatory is a predecessor-in-interest.").  An assignee from another location, like Hurford Global in Illinois, cannot assume a contract and then complain about the

forum selection clause in that contract that was reasonable to the assignor signatories. Thus, the public interests reflected in California's law regarding enforcement of forum selection clauses weighs in favor of transferring this case to the Central District of California.

To the extent Illinois law applies to some of Hurford Global's causes of action, the Court is confident that a court in California will be able to discern that law and apply it correctly. Any incrementally increased difficulty the application of Illinois law poses to a court in California is not sufficient to outweigh the relative ease with which a California court can apply California law to Hurford Global's contract claims.

Other factors such as docket congestion in the two possible districts or the effects of COVID-19 are not directly comparable. Each district has different levels of resources available to address these problems. For example, the Central District of California has far more cases pending, but it also has far more judges and court staff to address them. It has far more COVID-19 cases, but far, far greater healthcare resources.[4] So it is impossible to say whether one is better able to bear the burden of hearing this case than the other. Additionally, no Illinois public policy of protecting Illinois citizens substantially weighs against transfer where the Illinois citizen party has agreed to litigate in another forum.

None of the factors raised by the parties weigh against a transfer under § 1404(a) and many of them weigh strongly in favor of a transfer. None of them, even in combination, amount to the kind of extraordinary circumstances that would justify deviating from the forum identified in the ELA's forum selection clause. The Court can see no other obstacles to enforcement of the

---

[4] The Court notes that the Southern District of Illinois recently held its first jury trial since the pandemic began. That trial was held in the East St. Louis Courthouse and required multiple courtrooms and other large rooms to accommodate the need for social distancing. The Benton Courthouse, where this case would be tried, does not have those space resources, whereas the federal courthouse in Los Angeles surely does.

14

forum selection clause posed by any other relevant factor.  Accordingly, the Court will grant the motion to transfer venue.

    B. <u>Personal Jurisdiction</u>

    The transfer of venue will render moot the defendants' motion to dismiss for lack of personal jurisdiction.  The personal jurisdiction issue once this case is in court in California will present entirely different questions, if it is in issue at all.

**III.** **Conclusion**

    For the foregoing reasons, the Court:

- **DENIES** Hurford Global's motion to strike the defendants' reply brief (Doc. 52);

- **GRANTS in part** and **DENIES in part** the defendants' motion (Doc.42);
    - The motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED as moot**;
    - The motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is **GRANTED**; and

- **TRANFERS** this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California to be heard in its Western Division based in Los Angeles.

**IT IS SO ORDERED.**
**DATED:  November 3, 2020**

        <u>s/ J. Phil Gilbert</u>
        **J. PHIL GILBERT**
        **DISTRICT JUDGE**